UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERATIONS AT ELMWOOD PARK, LLC *et. al*,<br>    Plaintiffs<br><br>    v.<br><br>DR. NGOZI EZIKE *et. al*,<br>    Defendants | No. 20 CV 00533<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs[1] brought this suit against Dr. Ngozi Ezike in her official capacity as the Director of the Illinois Department of Public Health ("IDPH"), as well as Chiquita Brooks-LaSure[2] in her official capacity as the Administrator of the Centers for Medicare and Medicaid Services ("CMS"), seeking declaratory and injunctive relief for alleged procedural Due Process violations pursuant to 42 U.S.C. § 1983. R. 1 at 37-39. Defendants have each moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 22, 26.

For the following reasons, the Court grants the motions to dismiss for lack of subject matter jurisdiction.

---

[1] Generations at Elmwood Park, LLC, Generations at Applewood, LLC, Generations at Lincoln, LLC, Generations at McKinley Court, LLC, Generations at McKinley Place, LLC, Generations at Neighbors, LLC, Generations at Oakton Pavilion, LLC, Generations at Peoria, LLC, Generations at Regency, LLC, Generations at Riverview, LLC, and Generations at Rock Island, LLC, will herein be collectively referred to as "Plaintiffs" or only by their location (*e.g.*, Generations at Elmwood Park becomes "Elmwood Park").

[2] The Court properly *sua sponte* orders the substitution of the current officeholder. *See* Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

### I. CMS'S EVALUATION SYSTEM AND APPEAL PROCEDURES

Plaintiffs are skilled nursing facilities located throughout Illinois participating in federal Medicare and Medicaid programming as administered by CMS. R. 1 ¶¶ 1-11, 14, 18. Medicare's implementing regulations require periodic surveys of participating nursing homes to evaluate compliance with Medicare's programming requirements. *Id.* ¶ 16-17.

IDPH, CMS's survey provider in Illinois, accordingly, conducts two surveys of nursing homes. *Id.* ¶¶ 37-39, 44-45. First, IDPH performs Annual Health Surveys. *Id.* ¶ 39. During these unannounced inspections, surveyors examine nursing homes for "deficiencies," i.e., non-compliance with Medicare's quality requirements. *Id.*; *see* 42 U.S.C. § 1395i-3(h). IDPH also performs unannounced Complaint Surveys upon receiving a complaint about a nursing home. *Id.* ¶¶ 42-43. If IDPH discovers a deficiency during either survey, it records the deficiency, rates it according to its scope and severity, and then refers it to CMS for enforcement action. *Id.* ¶¶ 46-50.

CMS then selects an appropriate enforcement action in light of the severity of the reported deficiency. *Id.* ¶ 52. If the deficiencies "do not immediately jeopardize the health or safety of [the nursing home's] residents," CMS may impose statutory remedies. § 1395i-3(h)(2)(A)-(B); *see* R. 1 ¶ 57. According to Medicare's implementing regulations, those remedies include: (i) "temporary management," (ii) denying further

---

[3] For purposes of the pending motions, the Court accepts all of Plaintiffs' factual allegations as true and draws all reasonable inferences in their favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

payments, or (iii) imposing "[c]ivil monetary penalties." 42 U.S.C. § 488.406(a). Other possible enforcement actions include increased monitoring, transfer of residents, facility closure, and directed plans for corrections. R. 1 ¶ 52. If CMS determines that the deficiency "immediately jeopardize[s] the health or safety of its residents," however, then CMS "shall take immediate action to remove the jeopardy," including appointing temporary management, terminating the provider's agreement, or imposing any other previously described remedy. 42 U.S.C. § 1395i-3(h)(2)(A)(i).

The avenue for nursing homes wishing to challenge deficiency findings depends on the severity of the penalty that CMS imposes. R.1 ¶¶ 57-59. Facilities wishing to contest a deficiency finding resulting in regulatory enforcement measures may seek formal administrative review. *Id.* ¶¶ 59-62; 42 C.F.R. § 431.151(a)(1). Regulatory remedies, nonetheless, "may be imposed during the pendency of any hearing." 42 U.S.C. § 1395i-3(h)(5).

Formal administrative review entails a nursing home, first, requesting a formal evidentiary hearing before an administrative law judge ("ALJ"). R. 26 at 4. If unsuccessful before the ALJ, a nursing home may next appeal to CMS's Departmental Appeals Board ("DAB"). *Id.* After obtaining a final decision from the DAB—thereby fully exhausting the available administrative remedies—a nursing home may seek review of the deficiency finding in federal district court, pursuant to 42 U.S.C. § 405(g). R. 26 at 4.

Alternatively, if enforcement remedies are *not* imposed for a deficiency, a nursing home may either (1) submit a Plan of Correction geared toward reaching

3

compliance, (2) challenge a deficiency finding through CMS's Informal Dispute Resolution process, (which does not include a formal evidentiary hearing)[4] or (3) refuse to submit a Plan of Correction, thereby triggering enforcement remedies and entitling the nursing home to the formal administrative review process as described. R. 1 ¶¶ 57-64; R. 26 at 4.

## II. CMS'S NURSING HOME COMPARE WEBSITE

Medicare's implementing regulations also require CMS to maintain a Nursing Home Compare website. R. 1 at 1-2; *see* 42 U.S.C. § 1395i-3(i). CMS posts survey results for each facility on the Nursing Home Compare website immediately, notwithstanding whether a facility is appealing a deficiency finding. R. 1 ¶¶ 53-54, 67-68.

Nursing Home Compare also features a publicly-available "Five-Star Quality Rating System," which is used by consumers to differentiate between nursing homes, by CMS to make various reimbursement determinations, healthcare networks to decide whether to include certain providers in their coverage, and suppliers in setting contract prices. *Id.* at 1-2, ¶ 53; R. 31 at 2.

The Star Rating System assigns each nursing home a one-to-five-star rating based on their performance on the two surveys conducted by IDPH. R. 1 ¶¶ 19-21, 46-

---

[4] *See, e.g., Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 595 (7th Cir. 2014) (explaining that the IDR process is "just an exchange of written information between [the nursing home] and IDPH before an outside party . . . No live hearing was held and therefore no cross-examination or other credibility determinations were conducted regarding the allegations").

47. Deficiencies are "assigned a numerical value that is directly tied to the scope and severity" of the deficiency, "tallied," and then "converted into the nursing homes health inspection Star Rating." *Id.* ¶¶ 24-25. Because Star Ratings are not considered part of the regulatory "remedial framework," CMS is not required to afford a nursing home a hearing to contest new deficiencies before updating a homes' Star Rating. *Bryn Mawr Care, Inc.*, 749 F.3d at 597-98.

In addition to displaying participating nursing homes' Star Ratings, the Nursing Home Compare website uses an "abuse icon" (a red circle with a white hand in the middle) to denote nursing homes that have been cited for abuse. R. 1 at 2; R. 31 at 9. Like Star Ratings, abuse icons will be affixed to a facility's name, irrespective of whether the nursing home elects to challenge the underlying finding. R. 1 at 2.

### III.    PROCEDURAL BACKGROUND

Eleven Plaintiffs filed the instant lawsuit against Defendants, alleging "that their Due Process rights are being violated by Defendants' refusal to provide a hearing for every contested deficiency." R. 31 at 20. Plaintiffs additionally assert that Defendants' "failure to review deficiencies" denies them Due Process because any deficiency finding "lowers Plaintiffs' Star Ratings," resulting in Plaintiffs being deprived of "participation in certain government programs, some of which include access to business referrals." *Id.* Plaintiffs similarly challenge CMS's use of abuse icons on its website as violative of Due Process. *Id.* at 9.

All Plaintiffs allege that their Star Ratings have been or will be negatively impacted by deficiency findings. R. 1 at 10-27. Additionally, three Plaintiffs

5

(Generations at Lincoln, Neighbors, and Peoria) currently have abuse icons affixed to their names on the Nursing Home Compare website. R. 31 at 10.

Only one Plaintiff, Regency, has completed the administrative appeal process. R. 26 at 9. Regency, however, did not timely appeal within sixty days of the adverse decision to a federal court, as required by the Medicare Act. *Id.*; *see* 42 C.F.R. § 498.95.

Further, because formal administrative review is only available when a regulatory remedy is imposed, there are numerous deficiencies Plaintiffs challenge that are ineligible for formal administrative review. *See, e.g.,* R. 1 ¶ 287 (Plaintiffs acknowledging that "[m]ost of the Notice of Deficiencies at issue failed to notify Plaintiffs of the right to a hearing."). Two Plaintiffs (Elmwood and McKinley Court) have not challenged deficiencies through the formal administrative appeals process at all. R. 26 at 7; R. 31 at 17.

None of the remaining eight Plaintiffs with "active administrative review actions" have completed the formal review process. R. 26 at 7; R. 31 at 18. Specifically, Plaintiffs Rock Island and Neighbors have contested multiple deficiency findings, some of which are awaiting ALJ decisions and some of which have received decisions that have not been appealed to the DAB. R. 26 at 7-8. Plaintiffs Lincoln, Peoria, and Riverview are awaiting ALJ decisions. *Id.* Plaintiffs Applewood and Oakton Pavilion have received adverse ALJ decisions but have not yet appealed those decisions to the DAB. *Id.* The last, McKinley Place, has appealed its adverse ALJ decision and is awaiting the DAB's decision. *Id.*

## LEGAL STANDARD

When reviewing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court must assess whether Plaintiffs have carried their burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). To resolve a factual challenge to Plaintiff's assertion that jurisdiction exists, the Court may look to the complaint along with evidence outside of the pleadings. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). "The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718, 722 (7th Cir. 2012). A court lacking subject matter jurisdiction must dismiss the action without proceeding to the merits. *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006). "When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first. If the court dismisses . . . for lack of subject matter jurisdiction, the accompanying defense becomes moot and need not be addressed." *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. July 21, 1998); *see also Mathews v. Eldridge*, 424 U.S. 319, 326 (1976).

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must view the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face." *Bell*

7

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the plausibility standard is met where the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ANALYSIS

### I. SUBJECT MATTER JURISDICTION

The Supreme Court has held that Medicare provider "claims that contest a sanction or remedy"—even if contesting the "constitutionality of interrelated regulations or statutory provisions" or "disput[ing] agency policy determinations,"—must satisfy § 405(g)'s "channeling requirements" before courts will have subject-matter jurisdiction to resolve the dispute pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) or 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction). *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000).

Specifically, § 405(g) requires that a nursing home first (1) present their claim for relief to the agency, and (2) exhaust administrative remedies before seeking judicial review. *Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 923 (7th Cir. 2022). "The Secretary or the court may waive the requirement of exhaustion of administrative remedies; what cannot be waived 'is the requirement that a claim for benefits shall have been presented to the Secretary.'" *In Touch Home Health Agency, Inc. v. Azar*, 414 F. Supp. 3d 1177, 1186 (N.D. Ill. 2019) (quoting *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 624 (7th Cir. 2017).

In this case, Plaintiffs contend that their claim "arises under the Federal Medicare Act and its implementing regulations." R. 1 at 3. Plaintiffs argue the Court has subject matter jurisdiction their claims pursuant to § 1331 and § 1343(a)(3). *Id.*

Plaintiffs are incorrect—as stated, here, two nursing homes have not presented claims for formal review at all. R. 26 at 7; R. 31 at 17. Eight nursing homes have "active administrative review actions," for some of their deficiencies, while seeking review of deficiencies that are ineligible for administrative review. R. 26 at 7; R. 31 at 18. Finally, Regency did not timely appeal its final agency decision. R. 26 at 9; R. 31 at 20. Because § 405 contains "a set of special statutory provisions" that "create[]a separate, virtually exclusive, system of administrative and judicial review for denials of Medicare claims" and "explicitly bar[] a § 1331 suit," unless those procedures have been followed, and Plaintiffs have not plausibly alleged exhaustion, Plaintiffs have failed to establish subject matter jurisdiction. *Ill. Council on Long Term Care, Inc.,* 529 U.S. at 5; *see Illinois Ins. Guar. Fund*, 33 F.4th at 923 ("Courts consistently hold that § 405(h) bars judicial review of Medicare claims made by plaintiffs who fail to exhaust available administrative remedies as required by § 405(g).").

### A. Presentment

The Court begins by addressing the issue of presentment. Nearly all Plaintiffs challenge deficiencies for which CMS did not impose a regulatory remedy and so, no right to formal review was triggered. *See* R. 26 at 7-8; R. 31 at 18. Absent a right to formal review, Plaintiffs cannot satisfy § 405(g)'s presentment requirement.

Regarding the eight Plaintiffs that have only presented *some* of their deficiencies to CMS, the Court determines that it is proper to grant Defendants'

9

12(b)(1) motions to dismiss for these nursing homes' non-presented claims. As discussed, no exception excuses a nursing home from the presentment requirement. Plaintiffs cannot overcome the presentment requirement by "seek[ing] review" where review is statutorily unavailable. *See* R. 31 at 18.

Turning to Elmwood and McKinley Court, these nursing homes similarly claim to have "sought review and were not granted appeal rights by CMS." *Id.* at 17. The Court once again concludes that "[seeking] review" of deficiencies when the formal administrative process is foreclosed, *id.*, even if accepted as true, does not show that Elmwood and McKinley Court officially *presented* their claims to CMS. The Court accordingly also grants Defendants' 12(b)(1) motions to dismiss concerning Elmwood and McKinley Court's claims.

### B. Exhaustion

The Court now addresses § 405(g)'s exhaustion requirement as it applies to those eight Plaintiffs with pending administrative appeals. Because CMS has declined to waive the exhaustion requirement, R. 31 at 16, Plaintiffs' failure to exhaust administrative review deprives the Court of jurisdiction over Plaintiffs' claims unless an exception applies. *See Ill. Council on Long Term Care, Inc.*, 529 U.S. at 13; *Heckler v. Ringer*, 466 U.S. 602, 618 (1984) (explaining that "in certain special cases," enforcing the exhaustion requirement "is not always appropriate").

Plaintiffs, however, make no explicit argument that their constitutional claim should be excepted from the exhaustion requirement for being "collateral," nor do they explain what about CMS's procedures might make exhaustion "futile." *Compare In Touch Home Health Agency, Inc.*, 414 F. Supp. 3d at 1187 (analyzing whether

10

exhaustion requirement could be waived) *with* R. 31. Plaintiffs' have thus forfeited the argument that the exhaustion requirement should be waived in this case. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss] results in waiver.").[5]

Rather, Plaintiffs challenge the length of time the formal administrative review process takes, asserting that it "takes more than two years for a survey appeal to make its way through the CMS administrative process." R. 31 at 14-15. But the reality of the high "price" of "occasional individual, delay-related hardship" was explicitly evaluated by the Supreme Court. *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 13. Specifically addressing the risk of adversity posed by the lengthy administrative exhaustion process, the Supreme Court nonetheless concluded:

> In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified. In any event, such was the judgment of Congress[.]

*Id.*

The Court cannot second-guess the judgment of Congress. The Court therefore "hold[s] that the [Plaintiffs'] only source of federal court jurisdiction is the Medicare

---

[5] In any event, Plaintiffs' allegations do not plausibly support concluding that their claim is collateral. "By its terms, § 405(h) bars federal-question jurisdiction under 28 U.S.C. § 1331 for claims *arising under* the Medicare Act." *Illinois Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 923 (7th Cir. 2022) (emphasis added). This applies to Plaintiffs' Due Process claim that was *caused by* CMS implementing those regulations for "[e]ven styling a claim arising under the Medicare Act as a constitutional challenge does not ordinarily permit a plaintiff to forgo exhausting administrative remedies[.]" *Id.* at 924.

11

Act, not the federal question statute 28 U.S.C. § 1331" because "[P]laintiffs have not exhausted their administrative remedies and have not shown that a waiver of that requirement is warranted." *Martin v. Shalala*, 63 F.3d 497, 505 (7th Cir. 1995).

### C. Untimeliness

The Court next turns to Regency's failure to timely appeal its adverse agency decision within sixty days, as required by 42 C.F.R. § 498.95. Here, the DAB issued its final decision on July 5, 2019. *Generations at Regency Center*, DAB No. 2950, 2019 WL 4786137, at *1 (DAB July 5, 2019). The sixty-day deadline for Regency was thus September 3, 2019. Regency did not institute the present action, however, until January 23, 2020—well beyond the deadline.

Regency does not specifically seek equitable tolling, a doctrine which would allow the Court to forgive its untimely filing. *See, e.g.*, *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014). Because "[i]t is the petitioner's burden to establish" that equitable tolling is warranted, *id.*, Plaintiffs' omission forfeits the argument. *Bonte*, 624 F.3d at 466; *see, e.g.*, *Landeros-Cisneros v. Reno*, 43 F. Supp. 2d 949, 951 (N.D. Ill. 1999) (finding no subject matter jurisdiction where the plaintiff supplied no argument about why exception to jurisdictional bar applied).

For its part, Regency argues that its "claim is not . . . untimely" because it does not "seek to appeal the factual bases of the deficiencies in specific surveys before this Court." R. 31 at 20. Regency claims that it, instead, "seek[s] to establish that Defendants are denying Plaintiffs Due Process by denying appeals on deficiencies" that do not result in a regulatory remedy. *Id.* at 20-21.

12

It is not dispositive that Regency does not challenge the factual circumstances of its underlying claim. *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 14. Regency's argument that it should be able to contest a deficiency finding regardless of the remedy imposed "contest[s] a sanction or remedy" based on CMS's "agency policy determinations," which the Supreme Court has declared is subject to § 405(g)'s channeling requirements. *Id.* The Court thus concludes that it is proper to grant Defendants' 12(b)(1) motions to dismiss with respect to Regency as time barred.

## II. LEAVE TO AMEND

Finally, having determined that Plaintiffs' claims should be dismissed, the Court considers whether granting Plaintiffs' request for leave to amend is proper. R. 31 at 22. Because the time for amendment as of right has expired, Plaintiffs' may only amend their complaint with written consent or the Court's leave. Fed. R. Civ. P. 15(a).

"'The court should freely give leave to amend when justice so requires.'" *Runnion ex rel. v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (citation omitted). "Giving leave to amend freely is 'especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is *certain* from the face of the complaint that any amendment would be futile . . . the district court should grant leave to amend after granting a motion to dismiss.'" *Id.* at 519-20 (emphasis in original) (citation omitted).

Here, because Plaintiffs have not previously amended their complaint, the Court grants Plaintiffs Lincoln, Neighbors, Peoria, Rock Island, Riverview Applewood, Oakton Pavilion, McKinley Place, and Regency's requests to amend to address their "failure to plead allegations supporting the exceptions" to the

13

exhaustion requirement for their claims that have satisfied § 405(g)'s presentment requirement and "to allege specific facts" supporting "their Due Process claim." R. 31 at 22;[6] *see generally In Touch Home Health Agency, Inc.*, 414 F. Supp. 3d at 1187 n.6.

The Court, however, declines Plaintiffs' request with respect to any deficiency that has not been presented to CMS. "Where it is clear that the defect cannot be corrected so that amendment is futile," denying leave to amend is proper. *Runnion ex rel.*, 786 F.3d at 520. For deficiencies that have not been subjected to a regulatory remedy that would trigger formal administrative review, there are no facts Plaintiffs could plausibly allege to show that the nonwaivable presentment requirement has been satisfied. Accordingly, the Court denies leave to amend with respect to Elmwood, McKinley Court, and any other Plaintiffs' non-presented claims.

The Court additionally declines Plaintiffs' untimely request "to add a § 1361 claim for mandamus preventing Defendants from continuing to exceed their authority by improperly calculating the Star Rating using unreviewed deficiencies until each of Plaintiffs' administrative actions reaches termination in the district court." R. 31 at 22. The Court could not properly exercise jurisdiction over Plaintiffs' claims even under this provision for § 405(g)'s "exhaustion requirement applies as well to the plea for relief under the federal mandamus statute, 28 U.S.C. § 1361." *Michael Reese Hosp. Med. Center v. Thompson*, 427 F.3d 436, 441 (7th Cir. 2005).

---

[6] It would seem that Plaintiffs' Due Process claim is foreclosed by precedent. *See, e.g.*, *Columbus Park Nursing & Rehab. Ctr. v. Sebelius*, 940 F. Supp. 2d 805, 812 (N.D. Ill. 2013) (concluding that it was "unlikely" that the nursing home could show stigma-plus to plausibly allege a Due Process violation in CMS updating its Star Rating to reflect a contested deficiency); *Bryn Mawr Care, Inc.*, 749 F.3d at 597-98. Nevertheless, in light of the liberal standard for amending pleadings, the Court grants Plaintiffs' requested leave to amend.

14

"The Supreme Court has recognized that mandamus relief is available only if a plaintiff 'has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Id.* (citation omitted); *see also Acedo v. Cnty of San Diego*, 2021 WL 5412401, at *1 (9th Cir. Nov. 19, 2021) ("The district court properly dismissed for lack of subject matter jurisdiction [the plaintiff's] mandamus claim because [the plaintiff] failed to allege facts sufficient to show that he had exhausted his administrative remedies before filing suit."). Because Plaintiffs have not exhausted their administrative remedies, a § 1361 mandamus claim would fair no better than their current claims.

## CONCLUSION

For the foregoing reasons, Defendants 12(b)(1) motions to dismiss, R. 22, 26, are granted. The Court dismisses Plaintiffs' claims for lack of subject matter jurisdiction. Plaintiffs Lincoln, Neighbors, Peoria, Rock Island, Riverview, Applewood, Oakton Pavilion, McKinley Place, and Regency have 30 days leave to file an amended complaint (if they can do so consistent with this Order and Rule 11 of the Federal Rules of Civil Procedure).

Date: 9/7/2023

JEREMY C. DANIEL
United States District Judge